# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# PITTSBURGH

| | |
|---|---|
| ISIAH ANDREW ROTEN, and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 2: 21-cv-0323<br>)<br>) Chief United States Magistrate Judge |
| v. | ) Cynthia Reed Eddy<br>) |
| REV. ULRICH "ULLI" KLEMM, Administrator for Religion Volunteer, and Recreational Program Services at Central Office; MARK CAPOZZA, Facility Manager at SCI FAYETTE; PAUL AURANDT, Special Management Unit Manager at SCI Fayette; FRANK LEWIS, Facility Chaplaincy Programs Director at SCI Fayette; DEBRA HAWKINBERRY, Corrections Community Programs Manager at SCI Fayette; and JOSEPH TREMPUS, Major of the Guards at SCI Fayette, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION and ORDER[1]

Presently before the Court is the Motion for a Preliminary Injunction filed by Plaintiff, Isiah Andrew Roten (ECF No. 11). For the reasons that follow, the motion will be denied.

## I. Background and Procedural History

This case was initiated on March 10, 2021, by the receipt of a Motion for Leave to Proceed *in forma pauperis* ("IFP Moton") filed by Plaintiff, Isiah Andrew Roten, a state inmate incarcerated at the State Correctional Institution at Dallas. (ECF No. 1). Plaintiff's IFP motion

---

[1] Pursuant to 28 U.S.C. § 636(b)(1), the parties have voluntarily consented to have this case heard by a magistrate judge. (ECF Nos. 2, 40, 41).

1

was granted (ECF No. 5) and the Complaint filed on March 12, 2021. (ECF No. 6). The events giving rise to this lawsuit arose while Plaintiff was incarcerated at SCI-Fayette, and with the exception of Rev. Ulrich Klemm, the Religious Services Administrator, Division of Treatment Services, for the Pennsylvania Department of Corrections, the named defendants are all officials and employees working at SCI-Fayette. The principal claims put forward in the complaint are that Plaintiff was denied opportunities and various religious items necessary to practice his Asatru/Odinist religious faith, in violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA") (Count I); the First Amendment right to free exercise of religion and the First Amendment Establishment Clause (Counts II and III); and the Fourteenth Amendment right to equal protection (Count IV).

In lieu of filing an Answer, Defendants filed a Motion to Dismiss (ECF No. 42), and in response to that motion, Plaintiff filed a Verified Amended Complaint (ECF No. 61), which remains Plaintiff's operative amended pleading. *Garrett v. Wexford*, 938 F.3d 69, 84 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020).[2] The Amended Complaint is eighty (80) typewritten pages and has approximately fifty-four (54) pages of attached Exhibits, and raises the same four claims as was raised in the original Complaint. Plaintiff seeks several types of relief, including declaratory judgment that the practices and procedures at SCI-Fayette violated his First Amendment rights, injunctive relief seeking that he and all other Asatru Odinism inmates receive a Yule Feast and diet bags for each night of Yule, court costs, and nominal, compensatory, and punitive damages. His request to receive a Yule Feast on December 21, 2021, and diet bags for each night of Yule 2021 is the subject of the instant Motion for Preliminary Injunction.

---

[2] Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 64), which as of December 7, 2021, now is fully briefed. That motion remains under consideration by the Court.

## II.     Standard of Review

   A.     *Legal Standards for Preliminary Injunctive Relief*

"[A] preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain a preliminary injunction, a plaintiff must establish (1) that he is "reasonably likely to prevail eventually in the litigation" and (2) that he is "likely to suffer irreparable injury without relief." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney Gen. N.J.*, 910 F.3d 106, 115 (3d Cir. 2018) (quoting *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013)). "If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more than denying relief would harm the [plaintiff] and (4) whether granting relief would serve the public interest." *Id*. (quoting *Ayers*, 710 F.3d at 105). "If a plaintiff meets the first two requirements, the District Court determines in its sound discretion whether all four factors, taken together, balance in favor of granting the relief sought." *Fulton v. City of Phila.*, 922 F.3d 140, 152 (3d Cir. 2019) (citing *Winter*, 555 U.S. at 20). The plaintiff "must establish entitlement to relief by clear evidence," *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (citing *Winter*, 555 U.S. at 22), but the burdens of proof as to the substantive merits of a claim "track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 429 (2006).

The Prison Litigation Reform Act ("PLRA") restricts a court's discretion to issue preliminary injunctive relief. The PLRA specifies that "in a civil action with respect to prison conditions . . . preliminary injunctive relief must be narrowly drawn, extend no further than

necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). A court's discretion to issue preliminary injunctive relief is even further limited when a plaintiff seeks mandatory injunctive relief. "[W]hen the preliminary injunction is directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980) (citing *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976)). "[A] mandatory injunction is an 'extraordinary remedy to be employed only in the most unusual case.' " *Trinity Indus. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013) (citing *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972)). For a court to grant mandatory injunctive relief, "the moving party's 'right to relief must be indisputably clear.'" *Id*. (quoting *Communist Party of Indiana*, 409 U.S. at 1235). Furthermore, "a request for some form of mandatory proactive injunctive relief in the prison context must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration'." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1121, 1214 (8th Cir. 1982)).

    B.    *Legal Standards Under RLUIPA*

Plaintiff's motion seeks preliminary injunctive relief only under RLUIPA. *See* ECF No. 12 at 11-15. "Congress passed RLUIPA to grant heightened protection to prisoners from burdens imposed by the government." *Washington v. Klem*, 497 F.3d 272, 276 (3d Cir. 2007); *see also Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015) ("Congress enacted RLUIPA and its sister statute, the Religious Freedom Restoration Act of 1993 (RFRA) . . . 'in order to provide very broad

4

protection for religious liberty.' " (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014))). "Section 3 of RLUIPA states that 'no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution[,] even if the burden results from a rule of general applicability,' unless the government demonstrates that the burden is 'in furtherance of a compelling governmental interest' and is 'the least restrictive means of furthering that interest.' " *Washington*, 497 F.3d at 277 (alterations omitted) (quoting 42 U.S.C. § 2000cc-1(a)). RLUIPA "allows prisoners 'to seek religious accommodations pursuant to the same standard as set forth in RFRA." *Holt*, 135 S. Ct. at 860 (quoting *Gonzales,* 546 U.S. at 429). "[A] prisoner's request for an accommodation [under RLUIPA] must be sincerely based on a religious belief and not some other motivation." *Id*. at 862.

Under RLUIPA, "A plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington,* 497 F.3d at 277-78. "For the purposes of RLUIPA, a substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Id*. at 280 (emphasis in original).

Once an inmate meets his burden of showing that a policy or practice substantially burdens the exercise of his religion, "the burden shifts to [the government] to show that the policy is in furtherance of a compelling governmental interest and is the least restrictive means of furthering this interest." *Id.* at 283 (citing 42 U.S.C. § 2000cc-1(a)). "Interests of safety and

health play a particularly important role in the institutional setting." *Id*. (citing *Williams v. Morton*, 343 F.3d 212, 218 (3d Cir. 2003)). "Even in light of the substantial deference given to prison authorities," however, "the mere assertion of security or health reasons is not, by itself, enough for the Government to satisfy the compelling governmental interest requirement." *Id*. "Rather, the particular policy must further this interest." *Id*. "A conclusory statement is not enough." *Id.*

Even if the government establishes a compelling governmental interest, it must also establish that the policy or practice is the least restrictive means for achieving the compelling governmental interest. *Id.* at 283. " 'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party.' " *Holt*, 135 S. Ct. at 864 (quoting *Hobby Lobby*, 573 U.S. at 728). The government "must consider and reject other means before it can conclude that the policy chosen is the least restrictive means." *Washington*, 497 F.3d at 284. "If a less restrictive means is available for the government to achieve its goals, the government must use it." *Holt*, 135 S. Ct. at 864 (quoting *United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 815 (2000)).

### III.  Motion for Preliminary Injunction

    A.    *Plaintiff's Position*

Plaintiff is an adherent to Asatru Odinism.  According to Plaintiff, in the Asatru Odinism religion, religious exercises, known as Rituals, are performed to please the many Gods and Goddesses. The most commonly practiced Rituals are Blot, Feast, and Sumbel, and all three

Rituals require Sacred foods and libations as the Rituals are Sacrificial Offerings and Toasts offered to the Gods and Goddesses.

"The High Feast of Yule is generally observed for celebration starting on December 21st. Starting on the Winter Solstice is the Asatru Odinist Holy Season of Yule, known as Yule Fest." Mot. for Prel. Inj. at 3. Beginning on December 20th, Mr. Roten's Asatru Odinism beliefs require him to engage in Blot and Sumbel Rituals at least once a night until December 31st. *Id*. at 1-2.

Plaintiff once again chronicles, as he does in his amended complaint, his efforts to request religious accommodations. He states he has filed numerous grievances and religious accommodations for Yule Fest and Yule Diet Bags / Boxes, but Defendants have refused to process his requests "evidencing their blatant discriminatory disregard towards his faith," *id*. at 2, leaving Plaintiff "with virtually no way to practice his faith in regards to Yule 2021." *Id.* at 5.

Plaintiff seeks an Order requiring Defendant Ulrich Klemm to do the following:

1. Prepare and Initiate a Plan of Action to Accommodate Plaintiff, and others similarly situated, with an Asatru Odinism High Feast of Yule on December 21, 2021, separate from the institutional meal, consisting of religiously significant Roast Pork, Roast Beef, Traditional Baked Goods, Traditional Vegetables, Traditional Fruits, accompanied by Natural Fruit Juices as an acceptable Sacred Libation as an alternative to Mead, as mandated by sincerely held Asatru Odinism religious beliefs.

2. Prepare and Initiate a Plan of Action to Accommodate Plaintiff, and others similarly situated, with a nightly Religious Diet Bag / Meal Box, separate from the institutional menu, consisting of religiously significant Sacred Meat, Traditional Baked Good[s], Traditional Fruit, Traditional Nuts, accompanied with 3 Natural Fruit Juice Boxes and 3 Milk Cartons, with Honey if possible, for the Asatru Odinism Religious Blot, Sumbel, and Blaenir, on each of the 13 Nights of Yule Feast, as mandated by sincerely held Asatru Odinism religious beliefs.

3. Prepare and Initiate a Plan of Action for an Inmate Co-Payment associated with Financial Costs relating to purchasing and participating in the optional High Feast of Yule, to alleviate unnecessary financial burden upon the Department.

4. Prepare and Initiate a Plan of Action for an Inmate Co-Payment associated with Financial Costs relating to purchasing and participating in the optional 13 Nights of Yule Fest Religious Diet Bags / Meal Boxes Observances, to alleviate unnecessary financial burden upon the Department.

ECF No. 11. In support of his motion, Plaintiff submitted his own Declaration (ECF Nos. 11-1 and 67), and Declarations from the following individuals: James Betz (ECF No. 11-1; 90); William J. Daugherty (ECF No. 16); Matthew Tyler McNevin (ECF No. 26); and Kevin X. Green (ECF No. 82).

B. *Defendants' Response*

In their initial response (ECF No. 72), Defendants argue that the preliminary injunction should be denied because Plaintiff has failed to demonstrate a reasonable likelihood of success on the merits. Defendants make three arguments; however, the first two can be dismissed rather summarily. First, Defendants argue that Plaintiff's claims for injunctive relief should be denied as moot as he no longer is housed at SCI-Fayette. The Court finds this argument unavailing as the preliminary injunction motion clearly pertains to a request for religious accommodations for the Asatru Odinism High Feast of Yule on December 21, 2021, and the following 13 Nights of Yule Fest in 2021. Further, Defendant Klemm states in his Declaration that his duties with the Department of Corrections "involve the need to direct, plan and organize programs for various faith groups of inmates in the Department's facilities." Decl. of Ulrich Klemm, ¶ 2 (ECF No. 79-1).

Next, Defendants argue that Plaintiff's claims against Defendants Trempus, Hawkinberry, and Capozza fail to state a claim because he has not alleged adequate personal

involvement. This argument can be summarily denied as these three defendants are not referenced in the motion for preliminary injunction. Rather, the motion specifically refers only to Defendant Klemm and the DOC policies. The issue of the personal involvement of Defendants Trempus, Hawkinberry and Capozza will be addressed by the Court in the ruling on Defendants' motion to dismiss.

Defendants' third argument is that Plaintiff's claims should be denied under both the First Amendment and RLUIPA. However, as stated earlier, the preliminary injunction motion seeks relief only under RLUIPA. As the Court of Appeals for the Third Circuit has noted, "RLUIPA is broader than the First Amendment and requires the 'compelling government interest' and 'least restrictive means' test of strict scrutiny," while the "reasonably related to legitimate penological interest" standard applies in the First Amendment context. *Robinson, v. Superintendent Houtzdale*, 693 F. App'x 111, 117 (3d Cir. 2017) (citing *Cutter*, 544 U.S. at 717). Therefore, any discussion regarding claims under the First Amendment is not before the Court in this motion for preliminary injunction.

As to relief sought under RLUIPA, Defendants argue that: (1) "Plaintiff does not indicate that he was prevented from making the religious purchases on his own accord or engaging in his desired activities – simply that the prison staff would not purchase them for him," *id*. at 9; (2) that "prisons can provide categories of meals that comply with several religions and do not have to create individualized diets for each and every inmate," *id*. at 10; and (3) that RLUIPA does not require a State to pay for an inmate's devotional accessories. *Id.*

On November 22, 2021, the Court ordered Defendants to file supplemental briefing addressing the following six questions:

> (1) Defendants' response indicates that Plaintiff is confined in SCI-Forest; however, the DOC Inmate Locator reflects that Plaintiff is currently confined at SCI-Dallas. Defendants shall clarify in what facility Plaintiff is currently confined.
>
> (2) Will Plaintiff's current facility be providing him with a Yule Feast on December 21, 2021 and, if so, describe what items will be included that meal.
>
> (3) Does the commissary at Plaintiff's current facility have the items needed for individuals to prepare their own religious diet bags for the 13 nights of Yule? If so, is Plaintiff permitted to purchase these items?
>
> (4) Did Plaintiff file a Yule 2021 religious accommodation request with the Religious Accommodation Review Committee and, if so, what was the Committee's response.
>
> (5) What is the policy, if any, which states that a previously denied accommodation request cannot be requested for a period of up to one year?
>
> (6) Does Defendant Klemm's denial without prejudice of Plaintiff's religious accommodation for 2020 Yule Feast and Yule Diet Bags / Boxes preclude Plaintiff from filing a religious accommodation for 2021 Yule Feast and Yule Diet Bags / Boxes?

Order of 11/22/2021 (ECF No. 76). Defendants responded to the Order and attached the Declaration of Reverend Ulrich H. Klemm and DC-ADM 819, Section 4 – Religious Accommodations, which was relied upon by Defendant Klemm in his Declaration. (ECF No. 79). According to Defendant Klemm, on June 16, 2020, Plaintiff submitted a twenty-one (21) page religious accommodation request seeking several accommodations, including, a High Feast of Yule, which would include optional menu items of specific meats, fruits, libations, baked goods, and nuts, and meal boxes for each of the 13 nights of the Yule observance containing meat, fruit juice, baked goods, dairy, apples, and nuts. Plaintiff's request was denied on August 31, 2020, and the denial was explained as follows:

> The DOC already commemorates Yule by serving pork on that day. In addition to the foods supplied by the DOC, and based upon the inmate's management phase

> in the SMU, the inmate may be able to purchase desired items to celebrate these holy days from commissary. Punch, drink mixes, cakes, beef and pork products, sunflower seeds, etc. are sold in commissary.
>
> The requested meal boxes for each night of Yule are denied without prejudice as the inmate does not explain religious need for them.

Decl. of Ulrich H. Klemm, at ¶8c, 8d (ECF No. 79-1). Two months later, on October 30, 2020, Plaintiff submitted another religious accommodation request. On February 21, 2021, Plaintiff was provided notice that his October 20, 2020, request for a Yule Feast and Yule bags was denied based on DC-ADM 819, which states that requests for non-dietary religious requests are ineligible for reconsideration for one year after notification of the original denied request. *Id*. at ¶10. Thus, pursuant to DC-ADM 819, any request for a new request for a December 21 Yule Feast needed to be made by Plaintiff on or after August 31, 2021. Although nothing precluded Plaintiff from doing so, to date, Plaintiff has not submitted a new request for a Yule Feast or Yule Diet Bags.

Additionally, according to Defendant Klemm, all DOC facilities, including SCI-Dallas, will be serving pork as part of the mainline meal on December 21, 2021. And as to the availability of purchasing supplemental food items through the commissary, according to Defendant Klemm, due to Plaintiff's housing status, he may only purchase items from the Male Long-Term Administrative Custody List, which contains many items very similar to the items Plaintiff desires for his devotional use during the Yule season, such as:

a. Pork – Plaintiff can purchase Pepperoni slices and pork sticks
b. Beef – Plaintiff can purchase Beef Steak, Beef and Cheese Sticks, Beef Summer Sausage, and/or Beef Salami Slices
c. Baked Goods – Plaintiff can purchase 8 different kinds of cakes, pies and/or pastries

    d.       Vegetables – vegetables are served with regular mainline meals; Plaintiff may elect to purchase Ramen Noodles Hot/Spicy Veg. Flavor from Commissary, if he so chooses.
    e.       Fruits - fruits are served with regular mainline meals; Plaintiff can purchase dried fruits from Commissary if he so chooses.
    f.       Juices – Plaintiff can purchase two kinds of juice mixes from Commissary, and calcium-fortified beverages are served with regular mainline meals.

    C.      *Plaintiff's Reply*

Plaintiff filed a reply to Defendants' supplemental brief and the Declaration of Defendant Klemm. (ECF No. 89). In that filing, Plaintiff states the Long Term / AC Commissary list does not include items which he desires for his devotional use during the Yule season, yet these items are on the General Population Commissary list. Specifically, he contends that the Long Term / AC Commissary list does not contain milk/vanilla or strawberry, honey, pickles (vegetables), natural fruit juices, jerk pork or ham with natural juices, or shredded beef, or roasted beef with gravy. Plaintiff also states that he will not be receiving any of the Long-Term AC commissary items he ordered.

    D.      *Court Conferences with the Parties*

In an effort to informally resolve the issues surrounding Plaintiff's request for a Yule Feast and Yule Fest ritual diet bags for 2021 Winter Solstice observation, the Court conducted telephone conferences with the parties on December 3, 2021 and on December 6, 2021. During the December 3, 2021, conference, DOC represented that the mainline meal offered on December 21, 2021, will consist of pork barbeque, rice, greens, a roll, a piece of fresh fruit, and a beverage (the prisoner's choice of milk or a fortified drink).

Plaintiff confirmed that since August 31, 2021, he has not made a further request for non-dietary religious accommodation pursuant to DC-ADM 819, but that he placed a commissary

request order on December 1, 2021. He also renewed his request for the following fourteen (14) items, which he originally requested on April 14, 2021:

* nonfat dry milk;
* Gatorade fruit punch;
* Uni-Syn MRP Strawberry;
* Quaker oatmeal
* Instant Breakfast Drink Mix Vanilla;
* Apple danish
* Blueberry Cheese danish;
* Chunk ham with natural juices
* Shredded beef
* Mackerel filets
* Cheddar cheese stick
* Dill pickle
* Honey; and
* Mini pretzels.

(ECF No. 83-1 at 14). The conference was continued until December 6, 2021, to afford DOC counsel an opportunity to determine whether any of the food items Plaintiff had requested were available for him to purchase from Commissary.

At the reconvened conference on December 6, 2021, the Court was informed that of the items Plaintiff was requesting, only pork sticks are on the Long-Term AC Commissary List; the remainder of the requested items were from the General Population Commissary list, and due to Plaintiff's current housing status, he is not allowed to purchase from that list. The Court was advised that Plaintiff's commissary order for pork sticks would arrive at the facility on December 9, 2021, and Plaintiff would be provided with the pork sticks when they arrived at the facility.

## IV. Discussion

RLUIPA protects the exercise of religion in prison by generally preventing the government from substantially burdening a prisoner's exercise of religion. 42 U.S.C. § 2000cc-1(a) ("No government shall impose a substantial burden on the religious exercise of a person

residing in or confined to an institution . . . even if the burden results from a rule of general applicability . . . ."). To establish a prima facie case under RLUIPA, a prisoner must demonstrate (1) that he engaged in a religious exercise and (2) that the religious exercise was substantially burdened. If the plaintiff makes this prima facie showing the burden then shifts to the government to show that the police is in furtherance of a compelling governmental interest and is the least restrictive means of furthering this interest. *Washington v. Klem*, 497 F.3d 272, 283 (3d Cir. 2007) (citing 42 U.S.C. § 2000cc-1(a)). Alternatively, if the prisoner fails to present evidence to support a prima facie case, the government need not demonstrate "it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt v. Hobbs*, 574 U.S. 352, 364 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682, 728 (2014)). The application of the compelling interest standard is context-specific and deferential to the prison authorities' choices about how to run their institution. *Washington*, 497 F.3d at 283 (citing *Cutter*, 544 U.S. at 722-23).

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C. § 2000cc–5(7)(A).

> For the purposes of RLUIPA, a "substantial burden" exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington*, 497 F.3d at 280 (emphasis in original). "RUILPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt,* 574 U.S. at 362. Here, Plaintiff, contends that the DOC is placing a substantial burden on his religious practices

by denying him a separate Yule Feast and Yule Fest ritual diet bags for the 2021 Winter Solstice observation.

A significant obstacle to Plaintiff's request for preliminary injunction is that it is undisputed by the parties that Plaintiff has not complied with DC-ADM 819 and has not submitted a renewed request for a non-dietary religious accommodation after August 31, 2021. Notably, even if Plaintiff was able to overcome this obstacle, the Court would still find that Plaintiff has not established a reasonable likelihood of success on this RLUIPA claim. He has failed to establish that the failure to provide him with a separate Yule Fest meal or the nightly religious diet bags / meal boxes imposes a substantial burden on his religious exercise. He does not contend that the failure to provide a separate Yule Fest or the nightly religious diet bags prohibit him from practicing his religion. And he concedes that some of the foods he would like for his Yule Fest ceremonial meals will be satisfied with the mainline meal offered on December 21, 2021, and other foods can be supplemented by authorized items he can purchase through the commissary, subject to DOC limitations due to his current housing status.

Plaintiff seems to argue that he should be allowed to order commissary items from the General Population commissary list. However, this argument fails. When applying RLUIPA, [c]ontext matters." *Cutter*, 544 U.S. at 723. "Congress enacted RLUIPA 'mindful of the urgency of discipline, order, safety, and security' in prisons, and anticipated courts would give 'due deference to the experience and expertise' of prison officials 'in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Watson v. Christo,* 37 F. App'x 877, 882 (3d Cir. 2020) (citing *Cutter,* 544 U.S. at 723). The DOC has established approved commissary lists

based on a prisoner's management phase. Courts must give due deference to the DOC's procedures to maintain order, security, and discipline.

Further, to the extent that Plaintiff is requesting that the DOC create a co-payment plan to cover the costs of the supplemental items, such request fails. The law is clear that RLUIPA does not require a State to pay for an inmate's devotional accessories. *Cutter v. Wilkerson*, 544 U.S. 709, 720 n. 8 (2005).

The DOC has represented that items served on the mainline meal on December 21, 2021, and items on the long term AC commissary list, will provide Plaintiff with sufficient opportunity to adhere to his beliefs and practice his religion, as well as participate in Yule Fest ceremonial meals in his cell. There is no evidence that the failure to accommodate Plaintiff has pressured him to substantially modify his behavior or to violate his beliefs. Therefore, the Court finds that Plaintiff has failed to demonstrate by clear evidence that there is a reasonable likelihood of success on the merits for this RLUIPA claim.

Having concluded the preliminary injunctive relief is not warranted on the basis that Plaintiff cannot show a likelihood of success on the merits, the Court need not address the remaining factors. *Ferring Pharms., Inc. v. Watson Pharms., Inc.,* 765 F.3d 205, 210 (3d Cir. 2014) ("The failure to establish any element . . . renders a preliminary injunction inappropriate") (internal quotation marks and citations omitted).

## V. CONCLUSION

For all the foregoing reasons, the motion for preliminary injunction filed by Plaintiff, Isiah Andrew Roten, is not warranted because Plaintiff is unable to demonstrate a likelihood of success on the merits. Accordingly, the following Order is hereby.

**ORDER**

**AND NOW,** this 13th day of December, 2021, as set forth in the Opinion accompanying this Order, it is hereby **ORDERED** that the Motion for Preliminary Injunction filed by Isiah Andrew Roten, as supplemented by his additional pleadings in support of his request for a preliminary injunction, is **DENIED.**

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:    ISIAH ANDREW ROTEN
MH 9309
SCI Dallas
1000 Follies Road
Dallas, PA 18612
(via U.S. First Class Mail)

Abby N. Trovinger
Pennsylvania Office of General Counsel
(via ECF Electronic Notification)