# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# PITTSBURGH

| | |
|---|---|
| ISIAH ANDREW ROTEN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2: 21-cv-0323 |
| | ) |
| v. | ) Chief United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| REV. ULRICH "ULLI" KLEMM, Administrator for Religion Volunteer, and Recreational Program Services at Central Office; MARK CAPOZZA, Facility Manager at SCI FAYETTE; PAUL AURANDT, Special Management Unit Manager at SCI Fayette; FRANK LEWIS, Facility Chaplaincy Programs Director at SCI Fayette; DEBRA HAWKINBERRY, Corrections Community Programs Manager at SCI Fayette; and JOSEPH TREMPUS, Major of the Guards at SCI Fayette, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

Presently before the Court is the Motion to Dismiss Amended Complaint, with brief in support, filed by Defendants (ECF Nos. 64 and 65), the response in opposition filed by Plaintiff, Isiah Andrew Roten (ECF No. 78), and the Reply Brief filed by Defendants (ECF No. 94).

After carefully considering the motion and briefs, given the standards governing motions to dismiss set forth by the Supreme Court of the United States in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *and Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009), and as explained in United

---

[1] Pursuant to 28 U.S.C. § 636(b)(1), the parties have voluntarily consented to have this case heard by a magistrate judge. (ECF Nos. 2, 40, and 41).

1

States Court of Appeals for the Third Circuit precedent, *see., e.g.*, *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016), and for the following reasons, the motion will be granted in part and denied in part.

I.   **Factual Background and Procedural History**[2]

Plaintiff, Isiah Andrew Roten (Roten), is Pennsylvania state prisoner currently housed at SCI-Greene.  The events giving rise to this lawsuit occurred while Roten was housed at SCI-Fayette in the Special Management Unit (SMU).  Except for Rev. Ulrich Klemm, the Religious Services Administrator, Division of Treatment Services, for the Pennsylvania Department of Corrections (DOC), the named defendants are all DOC officials and employees working at SCI-Fayette.  Plaintiff has been granted leave to proceed *in forma pauperis.* (ECF No. 5).

Instead of filing an Answer, Defendants filed a Motion to Dismiss (ECF No. 42), and in response, Roten filed a typewritten 80-page Verified Amended Complaint (ECF No. 61) with 42 attached exhibits.  The Amended Complaint remains Plaintiff's operative amended pleading. *Garrett v. Wexford*, 938 F.3d 69, 84 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020).  Roten generally alleges that Defendants in their official capacities have denied him opportunities and various religious items necessary to practice his Asatru/Odinist religious faith, in violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA") (Count I); and that Defendants in their individual capacities have deprived him of his First Amendment right to free exercise of religion and the First Amendment Establishment Clause pursuant to 42 U.S.C. § 1983 (Counts II and III) and his Fourteenth Amendment right to equal

---

[2]   The background of this case is taken from the allegations in the Amended Complaint, which this Court must accept as true when considering this motion.

protection pursuant to 42 U.S.C. § 1983 (Count IV). As relief, Roten seeks injunctive and declaratory relief, and nominal, compensatory, and punitive damages.

**II.   Discussion**

Defendants assert several theories on which they argue that dismissal of the Amended Complaint is warranted: (1) Roten's monetary claims against Defendants in their official capacities are barred by the Eleventh Amendment; (2) Roten's claims that Defendants deprived him his personal religious books before March 10, 2019, should be dismissed under the statute of limitations; (3) Roten's RLUIPA claims against Defendants in their individual capacities are barred; (4) Roten's claims for injunctive and declaratory relief should be dismissed because he no longer is housed at SCI-Fayette; (5) Roten's claims against Defendants Trempus, Hawkinberry, and Capozza should be dismissed for lack of adequate personal involvement; (6) Roten's First Amendment claims related to Defendants' declining to purchase books, ritualistic food, and ritualistic drinks for his personal use should be dismissed because such action is not constitutionally required; and (7) in the alternative, Defendants are entitled to qualified immunity over the claims that the government should purchase individualized religious items for him. Roten, not surprisingly, responds that none of the Defendants' arguments have merit and none of his claims should be dismissed. The Court will address each of Defendants' arguments in turn.[3]

---

[3]   Defendants also attempt to raise for the first time in their Reply Brief the argument that Roten's Fourteenth Amendment equal protection claims should be dismiss. Reply Brief at pp. 11-12. The Court declines to consider this issue. *See Oberwager v. McKenchie Ltd.*, 351 F. App'x 708, 711 n.5 (3d Cir. 2009) ("It is, of course, in appropriate to raise an argument for the first time in a Reply brief.").

3

1. <u>Monetary Claims against Defendants In Their Official Capacities</u>

Defendants first argue that any monetary claims against Defendants in their official capacities are barred by the Eleventh Amendment. This argument can be denied summarily as it does not appear that Roten is seeking monetary damages against the Defendants in their official capacities. According to the Amended Complaint, and as Roten points out in his response to the motion to dismiss, the only claims brought against Defendants in their official capacities are those claims brought under RLUIPA[4] and he is not seeking monetary damages on those claims, only declaratory and injunctive relief.

2. <u>Property Claims Relating To Deprivation of Roten's Personal Religious Books</u>

Defendants next argue that Roten's claims for deprivation of his personal religious books prior to March 10, 2019, should be dismissed because the two-year statute of limitations expired before Roten filed this lawsuit. Plaintiff responds by arguing that the statute of limitations was tolled while he exhausted his administrative remedies. In their Reply Brief, Defendants argue

---

[4]  Defendants argue in their Reply Brief, that "Defendant's (sic) response indicates something different than his operative complaint." Reply Br. at 2. The Court notes that Count I of the Amended Complaint clearly states that the RLUIPA claim is brought against Defendants Aurandt, Lewis, Hawkinberry, Trempus, Capozza and Klemm <u>in their official capacities</u>. Amended Complaint, at p. 71 (emphasis added). And the claims brought pursuant §1983 are clearly against the defendants only in their individual capacities, not their official capacities. *See* "Count II: Deprivation of First Amendment Right to Free Exercise of Religion Against All Defendants In Their Individual Capacities"; "Count III: Violation of First Amendment Establishment Clause Against Defendant Lewis In His Individual Capacity"; and "Count IV: Deprivation of Fourteenth Amendment Right to Equal Protection Against All Defendants In Their Individual Capacities." Amended Complaint, ECF No. 61.

that Roten is referring to a different claim: the lack of Asatru resources in the religious library, not the deprivation of his personal religious books.[5]

The Prison Litigation Reform Act includes an administrative exhaustion requirement. As a result, it has been held that equitable tolling of any statute of limitations is appropriate while an inmate exhausts his administrative remedies. *See Thompson v. Pitkins*, 514 F. App'x 88, 90 (3d Cir. 2013) (holding that "[b]ecause exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act, the statute of limitations applicable to § 1983 actions may be tolled while a prisoner exhausts").

Defendants argue that Roten knew that upon his transfer to SCI-Fayette in October 2018, he had not received his personal religious books that were shipped separately from SCI-Rockview. Defendants argue that because Roten did not file this lawsuit until March 10, 2021, his property claims are untimely.

According to the Amended Complaint, Roten arrived at SCI-Fayette in October 2018 with two boxes of inmate property. Additionally personal property, including boxes with his Asatru Odinism Sacred Texts or Religious property, were shipped to SCI-Fayette separately. Amended Complaint, ¶27. In November 2018, Roten was placed on Inmate Movement Restriction and Inmate Property Restriction. *Id*. ¶28. Roten's boxes of Asatru Odinism Sacred

---

[5] The Court notes that appended as Exhibits to the Amended Complaint are two Grievances: No. 784065, dated 1/30/2019, which pertains to the lack of access to Odinist literature, and No. 811701, dated 7/15/2019, in which Roten requests that he "be given all of my religious texts that I never was given from my stored property." Amended Complaint, Exh. 10. The Final Appeal Decision, dated 11/1/2019, addresses Roten's claims of being denied his stored property: "you apparently chose not to include your religious literature in the limited amount of property you were permitted to retain when you transferred to your current level 5 housing unit. This was your choice." Amended Complaint, Exh. 28.

Texts or Religious property were received by SCI-Fayette while Roten was under Property Restriction. *Id.* ¶¶29, 30. According to Roten, after the Property Restriction was removed, he requested that his religious material be provided to him, but his requests were denied. *See, e.g.*, Inmate's Request to Staff Member, dated 3/27/2019 ("Nobody is letting me have any of my personal property for Phase 3; all I was given was my electronics. They won't give me a records box with written material, books or magazines. I ask every day. Roberts said that I was done getting any of my property."); Exh. 4 - Inmate's Request to Staff Member, dated 4/11/2019 ("Please be aware that my religious sacred texts were never given to me during the initial property inventory . . ."); Exh. 9 – Religious Accommodation Request Form dated 6/5/2019, in which Roten requests "permission to receive all religious texts/literature from my stored property . . . ." When his informal requests were denied, Roten filed a grievance on July 15, 2019, specifically requesting that he "be given all of my religious texts that I was never given from my stored property." Amended Complaint, Exh. 10, Grievance No. 811707. This grievance was denied on final review on November 1, 2019. Thus, it appears that the accrual of the claims for the deprivation of his personal religious books and the associated statute of limitations was tolled until November 1, 2019.

      The original Complaint is signed and dated by Roten on February 27, 2021. (ECF No. 6, p. 26). Giving Roten the benefit of the prisoner mailbox rule, this case was initiated well before the two-year statute of limitations ran. As a result, the Court agrees with Roten that the accrual of his property claims was equitably tolled during the time his grievance was pending.

### 3. RLUIPA Claims Against Defendants In Their Individual Capacities

Defendants correctly note that RLUIPA does not permit an action against prison officials in their individual capacities, *Sharp v. Johnson*, 669 F.3d 144, 154-55 (3d Cir. 2012), and seek dismissal of the RLUIPA claims against them in their individual capacities. But both the Amended Complaint and Roten's response to the motion to dismiss affirmatively state that his RLUIPA claims are brought against Defendants in their official capacities only. Thus, this argument can be dismissed without further discussion.

### 4. RLUIPA Claims For Injunctive and Declaratory Relief

Defendants' fourth argument is that Roten's claims for injunctive and declaratory relief are moot as he has been transferred from SCI-Fayette. This request will be granted in part and denied in part.

The record is clear that Roten has been transferred from SCI-Fayette and he is now housed at SCI-Greene. There is no indication in the record that Roten will be transferred back to SCI-Fayette in the foreseeable future. For that reason, to the extent Roten may be seeking injunctive and declaratory relief against officials and employees employed at SCI-Fayette, Roten's transfer to SCI-Greene renders that portion of his requested relief moot. He no longer presents a live case or controversy for injunctive relief about the policies or practices at SCI-Fayette because an injunction where he is no longer imprisoned would not provide him meaningful relief. *See Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993). On this limited record, any future incarceration of Roten at SCI-Fayette is speculative, so his case does not present an issue capable of repetition, yet evading review for the relief against the SCI-Fayette defendant. Although "[t]he mootness of a . . . claim for injunctive relief is not

necessarily dispositive regarding the mootness of a . . . claim for a declaratory judgment," *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011), Roten's claims for declaratory relief against the SCI-Fayette defendants are similarly moot. *See id*. at 1027-28 (explaining that prison-specific claims are moot on transfer because a declaration that a prisoner was wronged at the institution where he no longer is housed has no effect on defendant's behavior towards him). For these reasons, the Court finds that Roten's claims for injunctive and declaratory relief against the Defendants working at SCI-Fayette are moot.

Remaining, however, is Roten's RLUIPA claims against Defendant Rev. Ulrich Klemm, the Religious Services Administrator, Division of Treatment Services, for the DOC. According to the Amended Complaint, Defendant Klemm implements, controls, and promulgates <u>statewide</u> policies. It is not clear from this record the current state of Roten's request for religious accommodations and whether the alleged RLUIPA's violations by Klemm and the DOC can be or will be repeated in the future. Thus, out of an abundance of caution, at this early juncture of the case, the Court will permit Roten's claims for injunctive and declaratory relief to proceed against Defendant Klemm.

5. <u>Lack of Personal Involvement as for Defendants Trempus, Hawkinberry, and Capozza</u>

The United States Court of Appeals for the Third Circuit has explained that there are two theories of supervisory liability in a § 1983 action: (1) supervisors can be liable in their official capacity if they established and maintained a policy, practice, or custom which directly caused constitutional harm; or, (2) they can be liable personally if they participated in violating the plaintiff's rights, directed others to violate them, or, as persons in charge, had knowledge of and

acquiesced in their subordinates' violations. *Santiago v. Warmister Twp.*, 629 F.3d 121, 128-29 n.4 (3d Cir. 2010). Defendants contend that the only allegations against Defendants Trempus, Hawkinberry, and Capozza pertain to these individuals' participation in the grievance process itself. Roten responds that the grievances he submitted were intended to correct ongoing constitutional violations, not merely the denial of a grievance brought to address a discrete, past violation, and that none of these defendants took corrective action when warranted.

The Court finds that Roten has alleged enough to support a §1983 claim against Defendants Trempus, Hawkinberry, and Capozza. The Court recognizes that discovery may well reveal that Roten's allegations do not support his allegations that these three Defendants had personal involvement in any alleged constitutional violation, but at this early stage of the litigation, the allegations of the Amended Complaint must be accepted as true and all reasonable inferences must be drawn in Roten's favor. The factual allegations of the Amended Complaint are enough to state a plausible claim that Defendants Trempus, Hawkinberry, and Capozza participated in violating Roten's rights, directed others to violate them, or, as persons in charge, had knowledge of and acquiesced in their subordinates' violations.

      6.      <u>Roten's First Amendment Claims Are Not Constitutionally Required</u>

The First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides, *inter alia,* that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I. "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and

its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted). That said, a prisoner "retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also DeHart v. Horn,* 227 F.3d 47, 51 (3d Cir. 2000).

As a threshold matter, "only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *DeHart*, 277 F.3d at 51. To establish a free exercise violation, Plaintiff must show that Defendants "burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests." *Heleva v. Kramer*, 330 F. App'x 406, 408 (3d Cir. 2009) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

> [*Turner*] directs courts to assess the overall reasonableness of such regulations by weighing four factors. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," and this connection must not be "so remote as to render the policy arbitrary or irrational." Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards, and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that "fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests."

*DeHart*, 277 F.3d at 51 (quoting *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999)). Defendants do not dispute that Roten's claims arise out of a sincerely held religious belief. Rather, they contend that Roten was not prevented from making religious purchases on his own or engaging in his desired activities, and that his request for individualized religious purchases using government funds is not required by the First Amendment.

Roten responds that he was improperly denied his religious sacred texts from his personal property and denied access to the SCI-Fayette Asatru Odinism Religious Library. He also asserts, *inter alia*, that "Defendants' actions in 2019/20 have set off a sequence of events that has enabled Defendant Klemm to deny the Plaintiff meaningful Yule and YuleFest Accommodations year after year" and that accommodating the Asatru Odinism prisoners with a meaningful feast on the day of the Winter Solstice and Special Religious Diet Bags once a night for each night of YuleFest, would not be a heavy burden as the DOC accommodates "Nation of Islam, Muslim, and Judaism inmates with similar or identical requests for feasts and special religious diet bags. . . ." Resp., pp. 14 and 15.

Giving Roten the benefit of inferences he is entitled to at this stage of the litigation, the Court finds that the factual allegations of the Amended Complaint are enough to state a plausible First Amendment claim. Defendants' request to dismiss the First Amendment claims will be denied.

7. Qualified Immunity

Defendants' final argument, in the alternative, is that they are entitled to qualified immunity over Roten's requests for individualized religious purchases using government funds because this is not required by the First Amendment. And as such, they did not violate a clearly established constitutional right. his request is not required by the First Amendment.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231(2009). "[I]t is generally unwise to venture into a qualified immunity analysis at the pleading

stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (unpublished).  Based on the record, full analysis of whether qualified immunity applies is premature because there are unresolved questions of fact relevant to the analysis.  For example, it is not clear that Roten is requesting the government purchase individualized religious items for him. He argues that Defendants improperly denied him access to his personal religious texts from his personal property, that he was improperly denied access to DOC procured religious library materials, that Defendants refused to process his religious accommodation requests to receive a Yule Pork Feast and YuleFest Diet Bags, and that Defendants provide him the ability to receive an institutional pork meal for Winter Solstice.  Until such time as the claim is fleshed out, the Court hesitates to conclude that Defendants are shielded from liability under the doctrine of qualified immunity.

### III. Conclusion

For all the foregoing reasons, the motion to dismiss will be granted in part and denied in part.  An appropriate Order follows.

Dated:  June 9, 2022                             s/ Cynthia Reed Eddy
                                                 Cynthia Reed Eddy
                                                 Chief United States Magistrate Judge

cc:    ISIAH ANDREW ROTEN
       MH 9309
       169 PROGRESS DRIVE
       WAYNESBURG, PA 15370
       (via U.S. First Class Mail)

       Abby N. Trovinger
       Pennsylvania Office of General Counsel
       (via ECF Electronic Notification)